UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROSAURA AQUINO-MARTINEZ
and ESTEBAN COLUNGA-
GARCIA,

      Plaintiffs,

v.                                Case No.:  2:23-cv-1037-SPC-NPM

DIRECTOR, NEBRASKA
SERVICE CENTER, U.S.
CITIZENSHIP AND
IMMIGRATION SERVICES,

      Defendant.

_____/

## <u>OPINION AND ORDER</u>

Plaintiffs Rosaura Aquino-Martinez and Esteban Colunga-Garcia brought this action under the Administrative Procedure Act seeking judicial review of the United States Citizenship and Immigration Service's (USCIS or Agency) denial of Aquino-Martinez's petition for a U-Nonimmigrant status visa and Colunga-Garcia's derivative petition.  (Doc. 1).  Before the Court are the parties' cross-motions for summary judgment, responses, and replies (Docs. 29, 30, 39, 40), along with an amicus brief from the American Immigration Association, ASISTA Immigration Assistance, and the Immigration Center for Women and Children (Doc. 36).  For the below reasons, the Court grants

Plaintiffs' motion for summary judgment, denies Defendant's, and remands the case to the Administration.

## BACKGROUND

Plaintiffs are Mexican citizens. Aquino-Martinez entered the United States through the Mexican border, without inspection, in April 2001. On April 6, 2017, Aquino-Martinez was the victim of a crime. While crossing the street with her daughter, an unknown man rode up on a bicycle and abruptly stopped in front of them. He demanded that Aquino-Martinez hand over her purse. When she refused, he grabbed the purse, yanked it from her arms, and shoved her to the ground. He then rode away, never to be found. Because of the incident, Aquino-Martinez suffered an ankle injury as well as psychological trauma.

Based on this incident, Aquino-Martinez filed a Petition for U-Nonimmigrant Status (U-visa)[1] on August 15, 2017. (Doc. 29-1 at 136-46). The application included a Supplemental B, U-Nonimmigration Status Certification, on which the Lee County Sheriff's Office (LCSO) certified that Aquino-Martinez was a victim of qualifying criminal activity and that she has

---

[1] A U-visa is "a nonimmigrant visa that is available to noncitizen victims of certain crimes to encourage noncitizens to come forward and help law enforcement investigate and prosecute criminal activity." *Meridor v. U.S. Att'y Gen.*, 891 F.3d 1302, 1304 n.1 (11th Cir. 2018). "If the non-citizen receives a U visa, his or her spouse, children, and other qualifying family members are eligible for derivative U visas." *Lara v. Mayorkas*, No. 1:20-CV-4508-CAP, 2021 WL 3073690, at *2 (N.D. Ga. Apr. 16, 2021). Because the USCIS denied Aquino-Martinez's U-visa application, it likewise denied her husband, Colunga-Garcia's, derivative applications.

been helpful in the investigation of such criminal activity. (Doc. 29-1 at 41-47, 147-51). Specifically, LCSO certified that Aquino-Martinez was victim of "felonious assault," while indicating the incident was being investigated as a robbery under Florida's strong-arm robbery statute.

On December 9, 2022, USCIS denied Aquino-Martinez's U-visa petition and related applications. It determined that she was not a victim of a qualifying crime—felonious assault—because robbery is not substantially similar to felonious assault. Aquino-Martinez appeals the Agency's decision.

## STANDARD OF REVIEW

Under the APA, a reviewing court must hold unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or not in accordance with law." 5 U.S.C. § 706(2)(A); *Bidi Vapor LLC v. U.S. Food & Drug Admin.*, 47 F.4th 1191, 1202 (11th Cir. 2022). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). A reviewing court must "ensure[] that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* In doing so, courts must consider "only the basis articulated by the agency itself, not appellate counsel's *post hoc* rationalizations." *Bidi Vapor*, 47 F. 4th at 1202 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

50 (1983)); *see also Dep't Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) ("An agency must defend its actions based on the reasons it gave when it acted.").

## ANALYSIS

The issue before the Court is whether the Agency reasonably determined that Aquino-Martinez was not a victim of a qualifying criminal activity. The best place to start this analysis is with the statute itself. Under 8 U.S.C. § 1101(a)(15)(U)(i), an immigrant may obtain a U-visa if she (1) has suffered physical or mental abuse as a result of being victim of a qualifying criminal activity, (2) possess information concerning criminal activity, and (3) has "been helpful, is being helpful, or is likely to be helpful" to law enforcement authorities who are investigating or prosecuting the criminal activity.[2] Pertinent here, the statute defines criminal activity as "involving one or more of the following or any similar activity[3] in violation of Federal, State, or local criminal law," followed by a list of specific criminal offenses, one of which is "felonious assault." *Id.* § 1101(a)(15)(u)(iii).

---

[2] To demonstrate helpfulness, the petitioner must receive a status certification from a law enforcement official, a prosecutor, or a judge. 8 U.S.C. § 1184(p)(1). Aquino-Martinez provided the Supplemental B status certification from LCSO to accomplish this purpose.

[3] "Any similar activity" is defined as "criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities." 8 C.F.R. § 214.14(a)(9).

In denying Aquino-Martinez's U-visa application, the Agency reviewed LCSO's status certification, which reflected that Aquino-Martinez was a victim of felonious assault. (Doc. 29-1). More specifically though, it indicated that LCSO was investigating the incident as a robbery under Florida's strong-arm robbery statute—Fla. Stat. § 812.13(2)(c). So, to determine whether Aquino-Martinez was victim of a qualifying criminal activity, the Agency analyzed whether the elements of Florida's strong-arm robbery are substantially similar to the elements of felonious assault. *See* 8 C.F.R. § 214.14(a)(9). But what are the elements of felonious assault? Well, the Agency did not provide a federal standard. Instead, it compared the elements of robbery to the elements of Florida's aggravated assault (Fla. Stat. § 784.021). So it seems the Agency considered Florida's aggravated assault as the equivalent of "felonious assault" under 8 U.S.C. § 1101(a)(15)(U)(iii). This means that Aquino-Martinez must have been a victim of aggravated assault under Florida law or a similar activity to qualify for U-visa status.

The Agency compared the elements of Florida's strong-arm robbery to the elements of Florida's aggravated assault. Under Florida law, an aggravated assault is an assault:[4] (a) with a deadly weapon without intent to

---

[4] Florida defines an assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-funded fear in such other person that such violence is imminent." Fla. Stat. 784.011. There does not seem to be any dispute that Aquino-Martinez was assaulted. But simple assault is just a misdemeanor and thus not a felonious assault.

kill, or (b) with an intent to commit a felony.  Fla. Stat. § 784.021(1).  A robbery is the taking of money or other property from the custody of another with force, violence, assault, or putting in fear, and with the intent to deprive the person of the money or property."  Fla. Stat. § 812.13(1).  Strong-arm robbery occurs when the offender commits the robbery without a firearm, deadly weapon, or other weapon.  Fla. Stat. § 812.13(2)(c).  Aggravated assault is a felony in the third degree whereas strong-arm robbery is a felony in the second degree.  Fla. Stat. §§ 784.021(2), 812.13(2)(c).

After comparing the elements of these crimes, the Agency determined they are not "substantially similar."  Arriving at this conclusion, the Agency explained that strong-arm robbery involves the taking of money or property, does not involve use of a weapon, and does not involve the intent to commit a felony.  Conversely, the Agency continued, aggravated assault involves a deadly weapon *and* an intent to commit a felony, and it does not involve the taking of money or property.  (Doc. 29-1 at 8).  No other discussion of the elements is provided.

There are multiple problems with the Agency's cursory review of the elements.  The first is aggravated assault does not require use of a deadly weapon *and* an intent to commit a felony; only one is needed.  *See* Fla. Stat. § 784.021(1).  So right off the bat, the analysis is incorrect.  More problematic though is the general lack of analysis.  The Agency simply regurgitated the

6

elements of robbery and aggravated assault and pointed out the distinctions between the two crimes. But this does little more than establish that the two crimes are not identical, not that they lack substantial similarity. Indeed, the Agency barely addressed Plaintiffs' position as to why the crimes are substantially similar.

To demonstrate similarity, Plaintiffs note that an assailant commits aggravated assault if he commits an assault with an intent to commit a felony. Robbery is a felony that itself requires assault or force during the taking. Given Aquino-Martinez was victim of a robbery, the argument goes, by definition, she was also victim of aggravated assault. This seems like a fair point. But the Agency simply "acknowledged" her position and casually rejected it because "mere overlap with, or commonalities between" the offenses is insufficient. (Doc. 29-1 at 8). And even assuming this one-line rejection of Plaintiffs' position was sufficient, it fails to address Plaintiffs' additional observation that aggravated assault is a lesser-included offense of robbery.

Both aggravated assault and simple assault are lesser-included offenses of robbery. "A lesser included offense is one whose elements are entirely contained within the elements of another, greater, offense." *Allen v. State*, 324 So. 3d 920, 925 (Fla. 2021). This determination is made by comparing statutory elements. *Id.* (citation omitted). Under Florida law, there are two types of lesser-included offenses: necessary (or "category one") and permissive

7

(or "category two"). *Id.* at 925-26. In a category one lesser-included offense, "every element of the lesser offense is always also an element of the greater." *Id.* at 926. So if a perpetrator committed each element of the greater crime, then he necessarily committed the elements of the lesser crime as well. *Id.* Conversely, "[a] permissive, or 'category two,' lesser included offense exists when the two offenses appear to be separate on the face of the statutes, but the facts alleged in the accusatory pleadings are such that the lesser included offense cannot help but be perpetrated once the greater offense has been." *Id.* Stated differently, whether a crime is a category two lesser-include offense turns on the charges and facts in the case. *Id.*

The facts here indicate aggravated assault is a category two lesser-included offense. The Florida Standard Jury Instructions explicitly list aggravated assault as a category two lesser-included offense of robbery. *See* Fla. Std. Jury Instr. (Crim.) 15.1 (Robbery); Fla. Std. Jury Instr. (Crim.) Schedule of Lesser Included Offenses. And the facts of the case, which category two lesser-included offenses turn on, support its application. As discussed above, Aquino-Martinez was assaulted during the course of the robbery. So if she was the victim of robbery—a felony—she was necessarily a victim of assault with the intent to commit a felony. This would suggest more than "mere overlap or commonalities" between the elements of the two crimes, as the Agency claimed.

That's not all.  As Plaintiffs point out, simple assault is a category one lesser-included offense of robbery.  *See* Fla. Std. Jury Instr. (Crim.) 15.1 (Robbery).  This demonstrates that an assault is a necessary component of robbery, which is itself a felony.  It follows then that a robbery is, arguably, a form of felonious assault.  Despite these clear parallels between robbery and aggravated assault, the Agency dismissed them with little explanation.

The Agency's briefing is telling.  It asserts that "an offense does not constitute a felonious assault under 8 C.F.R. 214.14(a)(9) [or 8 U.S.C. 1101(a)(15)(U)] unless a perpetrator either uses a deadly weapon or the assault results in serious physical injury." (Doc. 39 at 9).  But this is not the standard the Agency applied in the decision.  Rather, it adopted the elements of Florida's aggravated assault to define felonious assault, which does *not* require the use of a deadly weapon.  What's more, the Agency's decision contained no analysis as to the extent or seriousness of Aquino-Martinez's injuries.

Apart from the shortcomings of the Agency's analysis, its reasoning for ignoring the similarities between robbery and aggravated assault are not reasonable.  In the Agency's view, it matters not that the robbery also rendered Aquino-Martinez a victim of aggravated assault because LCSO never specified it was investigating an aggravated assault.  (Doc. 29-1 at 8).  But Aquino-Martinez did not need to be a victim of aggravated assault.  She only needed to be a victim of a crime similar to aggravated assault.  So this position makes

little sense.   What's more, whether LCSO actually investigated aggravated assault is not dispositive.   Rather, "it is the underlying criminal conduct, and not the specific statutory charges filed and prosecuted [or investigated], that should ultimately determine whether an applicant has been the victim of a qualifying crime within the meaning of the statute."   *Genc v. Renaud*, 715 F. Supp. 3d 189, 197 (D. Conn. 2024).   It seems the underlying criminal conduct— assaulting Aquino-Martinez during the commission of a robbery—fits squarely within Florida's definition of aggravated assault.   Yet at no point did the Agency consider the factual circumstances of the incident.   Instead, it improperly focused on the statutory elements of the crime investigated.   *See id.*; *see also* 72 Fed. Reg 53014-01 ("[Q]ualifying criminal activity may occur during the commission of non-qualifying criminal activity.").

The Agency also cited a lack of evidence that LCSO "actually detected or investigated a felonious assault against [Aquino-Martinez]."  (Doc. 29-1 at 9). This is not entirely true.  On the certification form, LCSO marked that Aquino-Martinez was victim of "felonious assault." (Doc. 29-1 at 42).  But according to the Agency, this alone is insufficient because LCSO failed to explain why it provided a citation for robbery, not felonious assault, if a felonious assault was detected, investigated, or prosecuted.  (*Id.*)  Boiled down, the Agency's position can be characterized as: "We find that robbery is not felonious assault, therefore LCSO's citation to robbery fails to provide a citation to felonious

assault." But this presupposes that robbery is not similar criminal activity to felonious assault, something the Agency has not reasonably explained.

In its motion for summary judgment, the Agency unsuccessfully tries to support its decision. At one point, it argues that Plaintiffs' position overlooks "Congress's significant omission of robbery as a qualifying criminal activity." (Doc. 29 at 11). On the contrary, it seems the Agency overlooks that the criminal activity need not be explicitly enumerated in the statute. Rather, qualifying criminal activities are those crimes listed in the statute *or* a similar crime. *See* 8 U.S.C. § 1101(a)(15)(u)(iii). The Agency also cites to an Eleventh Circuit case that repeats a definition of "aggravated assault" from the Sentencing Guidelines. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1332 (11th Cir. 2010). But the point of this is unclear given the Agency did not apply this definition in its analysis, and it cannot come up with a new, *post hoc* standard. Similarly, the Agency's reference to a Western District of Texas case, which upheld the USCIS's determination that robbery was not similar to felonious assault, fails to sway the Court because it applied an entirely different definition of felonious assault than the one used here. *See Lupascu v. Nielsen*, No. 5:17-CV-416-OLG, 2018 WL 11452323 (W.D. Tex. Oct. 23, 2018). So none of these points are persuasive.

Strangely, the Agency also cites an administrative appeal that seems to bolster Plaintiffs' position. In *Matter of J-V-E- Appeal of Nebraska Service*

11

*Center Decision Form I-918, Petition For U Nonimmigrant Status*, the petitioner was victim of armed robbery under Florida law. 2019 WL 3386154, at *2. Indeed, armed robbery is all that law enforcement investigated. *Id.* The Agency denied the petitioner's U-visa application because it found armed robbery did not involve the qualifying crime of felonious assault. *Id.* But on appeal, the AAO reversed, observing that armed robbery "encompasses aggravated assault" under Florida law. *Id.* at *3. It continued, noting that "[a]lthough armed robbery requires the additional element of taking money or other property, both offenses punish a perpetrator who commits an assault with a firearm or other deadly weapon" and even observed that aggravated assault is a lesser included offense of armed robbery under Florida law. *Id.* So it concluded that "armed robbery [under Florida law] involves aggravated assault [under Florida law]. *Id.*

The Agency cites this decision to reinforce its position that a weapon must be used during the offense to constitute felonious assault. But the Court sees it differently. The AAO considered that aggravated assault—the Florida equivalent of felonious assault—was a lesser included offense of armed robbery and, as a result, armed robbery encompassed aggravated assault. This appears to be the case here. Although Aquino-Martinez was victim of strong-arm robbery (rather than armed robbery), it nevertheless encompasses

12

aggravated assault, as discussed above. So *Matter of J-V-E* supports Plaintiffs' position.

The Agency also cites to *In re 22316634 Appeal of Nebraska Service Center Decision Form I-918, Petition For U Nonimmigrant Status*. There, the petitioner was victim of strong-armed robbery when he was approached by three individuals who demanded money. 2022 WL 4080005, at *2. The petitioner handed the perpetrators cash, and they drove away. *Id.* Like here, the certifying agency only listed on the certification form that it investigated strong-arm robbery. *Id.* The AAO determined this crime did not involve felonious assault because nothing in the record demonstrated the petitioner was assaulted. *Id.* at *4-5. Here, however, Aquino-Martinez was shoved to the ground during the robbery, and the parties have not disputed that she was assaulted. So these cases are not the same. More importantly though, the Court does not suggest or conclude that robbery under Florida law is similar or substantially similar to "felonious assault." Rather, the Court simply finds that the Agency's reasoning is capricious and arbitrary and must be further explained.

To wrap up, the Court cannot say that the Agency provided a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 52. Although it adopted Florida's aggravated assault statute to define the federal "felonious assault," it ignored the fact that the criminal

13

activity in this case fits squarely within the elements of this crime. It also ignored that Florida's aggravated assault is a lesser-included offense of the investigated crime—robbery—which at least suggests similarity. And its grounds for doing so are not reasonably explained.[5]  So this issue must be remanded to the Agency for further proceedings.

Accordingly, it is now

**ORDERED:**

1.  Plaintiffs' Motion for Summary Judgment (Doc. 30) is **GRANTED.**

2.  Defendant's Motion for Summary Judgment (Doc. 29) is **DENIED**.

3.  This case is **REMANDED** to the USCIS to further consider and explain, based on the evidence in the record and in accordance with the law, whether Aquino-Martinez (and, derivatively, Colunga-Garcia) meet the statutory requirements for U-Nonimmigrant status.

**DONE** and **ORDERED** in Fort Myers, Florida on January 23, 2025.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record

---

[5] Apart from disputing the Agency's decision, Plaintiffs' briefing attacks the regulatory framework for reviewing U-visa applications.  But the Court does not reach these issues.